Marc S. Williams (Bar No. 198913)
Email: mwilliams@cohen-williams.com
Michael V Schafler (Bar No. 212164)
Email: mschafler@cohen-williams.com
Neil S. Jahss (Bar No. 162744)
E-mail: njahss@cohen-williams.com
Brittany L. Lane (Bar No. 323440)
Email: blane@cohen-williams.com
COHEN WILLIAMS LLP
724 South Spring Street, 9th Floor
Los Angeles, CA 90014
Telephone: (213) 232-5160
Facsimile: (213) 232-5167

Attorneys for Defendants Red Rock Secured,
LLC and Sean Kelly

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, CALIFORNIA DEPARTMENT OF FINANCIAL PROTECTION & INNOVATION, and STATE OF HAWAII, DEPARTMENT OF COMMERCE AND CONSUMER AFFAIRS, SECURITIES ENFORCEMENT BRANCH,<br><br>                Plaintiffs,<br><br>        v.<br><br>RED ROCK SECURED, LLC, and SHADE JOHNSON-KELLY a/k/a SEAN KELLY, and ANTHONY SPENCER,<br><br>                Defendants. | Case No. 2:23-cv-03680-RGK-PVC<br><br>**DEFENDANTS RED ROCK SECURED, LLC AND SEAN KELLY'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**<br><br>*Filed concurrently with Request for Judicial Notice, Declaration of Sean Kelly and Proposed Orders*<br><br>Judge:   Hon. R. Gary Klausner<br>Date:     August 14, 2023<br>Time:     9:00 a.m.<br>Place:    Courtroom 850, 8th Floor<br><br>Complaint Filed:   May 15, 2023<br>Trial Date:           Not Scheduled |

COHEN **WILLIAMS** LLP

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on August 14, 2023, at 9:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of Honorable R. Gary Klausner, United States District Judge, Central District of California, located at Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, CA 90012, Courtroom 850, 8th Floor, Defendants Red Rock Secured, LLC and Sean Kelly (collectively "Red Rock" unless otherwise indicated) will, and hereby do, move the Court for an order dismissing the following causes of action in Plaintiff's Complaint (ECF 1) as follows:

- Plaintiffs' **first** claim for relief to the extent that it is based on: (a) alleged misrepresentations that Red Rock's markup on common bullion was 1%-5% and purported omissions pertaining to Red Rock's markup on its RTH coins (Comp. ¶¶76, 82-110, 199e, 207, 216);[1] (b) alleged misrepresentations and omissions about the retail value of RTH coins (Comp. ¶¶153-157, 164-167); (c) statements in the Transaction Agreements purportedly about the markup on RTH coins (Comp. ¶¶74-82); (d) alleged misrepresentations and omissions not made in connection with any contract of sale of any commodity (Comp. ¶¶117-119, 126-128, 153-167, and 200d); (e) the scheme liability claim pursuant to 17 C.F.R. §180.1(a)(1) and (3) to the extent it relies upon the same flawed alleged misrepresentations and omissions described in (a)-(d) above; (f) the entire scheme liability claim pursuant to 17 C.F.R. §180.1(a)(1) and (3) for lack of specificity under Federal Rule of Civil Procedure 9(b); (g) the entire first claim for relief based on Plaintiffs' improper exercise of jurisdiction under the Commodity

---

[1] Plaintiffs plead that "[e]ach use or employment … of any … untrue or misleading statement of fact, omission of material fact necessary to make statements not untrue or misleading …. is alleged as a separate and distinct violation of 7 U.S.C. §9(1) and 17 C.F.R. §180.1(a)(1)-(3)." (Complaint ¶225.)

Exchange Act ("CEA"); and (h) the control liability claim against Sean Kelly to the extent there is no primary violation by Red Rock.

- Plaintiffs' **second** claim for relief to the extent that it is based on the same flawed alleged misrepresentations and omissions underlying the first claim for relief, and the entire second claim for relief for lack of specificity under Federal Rule of Civil Procedure 9(b);

- Plaintiffs' **fourth** claim for relief to the extent that it is based on the same flawed alleged misrepresentations and omissions underlying the first and second claims for relief, and the entire fourth claim for relief for lack of specificity under Federal Rule of Civil Procedure 9(b); and

- Plaintiffs' **fifth** and **sixth** causes of action for lack of jurisdiction under Hawaii's securities law, lack of specificity under Federal Rule of Civil Procedure 9(b) and failure to adequately plead falsity.

This Motion is made pursuant to Federal Rules of Civil Procedure 8, 9(b) and 12(b)(6), and is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities, Request for Judicial Notice and/or Incorporation by Reference, and Declaration of Sean Kelly; the pleadings and evidence on file in this matter, oral argument of counsel, and such other materials and argument as may be presented in connection with the hearing of the Motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on July 6, 2023.

Dated:  July 14, 2023                    **COHEN WILLIAMS LLP**

By: _____

Neil S. Jahss
Marc S. Williams
Michael V Schafler
Brittany L. Lane
Attorneys for Defendants Red Rock Secured, LLC and Sean Kelly

iii

# <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................1

I.     INTRODUCTION ...........................................................................................1

II.    STATEMENT OF FACTS .............................................................................2

III.   THE COURT SHOULD GRANT DEFENDANTS' MOTION TO DISMISS.........4

     A.   Plaintiffs Have Failed to State a Claim for Violation of the CEA and
         Related Regulations (First Claim)......................................................4

         1.   Many Statements/Omissions Are True or Not Misleading, or Not
              Sufficiently Pled with Specificity as to Falsity...................................4

              a.   Statements about the Markup of Common Bullion and
                   Omissions about the Markup of RTH Coins ............................4

              b.   Statements/Omissions about the Retail Value of RTH Coins....9

              c.   Statements in the Transaction Agreement about the Markup ..10

         2.   Post-Transaction Statements Are Not Made in Connection with Any
              Contract of Sale...................................................................11

         3.   Plaintiffs Have not Pled a Scheme Liability Claim with Sufficient
              Particularity under Rule 9(b) ...............................................12

         4.   The CEA Does Not Confer Jurisdiction to Bring an Enforcement
              Action Relating to Retail Metals Sales .................................13

         5.   Plaintiffs Have Failed to State a Claim for Control Person Liability
              Against Kelly ......................................................................14

     B.   California Has Failed to State a Claim for Commodities Fraud
         (Second Claim).................................................................................14

     C.   California Has Failed to State a Claim for Investment Adviser Fraud
         (Fourth Claim)..................................................................................15

     D.   Hawaii Has Failed to State a Claim for Securities Fraud and Elderly
         Exploitation (Fifth and Sixth Claims) .............................................16

iv

# TABLE OF AUTHORITIES

**Cases**

*Basic Inc. v. Levinson*,
  485 U.S. 224, 239 (1988) ....................................................................6

*Bergeron v. Monex Deposit Co.*,
  2020 WL 3655495 (C.D.Cal. Apr. 29, 2020) ...............................5, 14

*Brody v. Transitional Hosps. Corp.*,
  280 F.3d 997 (9th Cir. 2002) ............................................................6

*C.F.T.C. v. Kraft Foods*,
  153 F.Supp.3d 996 (N.D.Ill. 2015) ...................................................4

*C.F.T.C. v. Monex Credit Co.*,
  931 F.3d 966 (9th Cir. 2019) ......................................................4, 13

*C.F.T.C. v. Nat'l Inv. Consultants, Inc.*,
  2006 W 2548564 (N.D.Cal. Sept. 1, 2006) ....................................14

*Fabozzi v. StubHub*,
  2012 WL 506330 (N.D.Cal. Feb. 15, 2012) ......................................8

*Garrison v. Ringgold*,
  2019 WL 2089509 (S.D.Cal. May 13, 2019) ..................................11

*In re GlenFed, Inc. Sec. Litig.*,
  42 F.3d 1541 (9th Cir. 1994) ....................................................13, 15

*In re Rigel Pharm., Inc. Sec. Litig.*,
  697 F.3d 869 (9th Cir. 2012) ............................................................6

*In re Robinhood Order Flow Litig.*,
  2022 WL 9765563 (N.D.Cal. Oct. 13, 2022) ..............................4, 11

*In re Twitter, Inc. Sec. Litig.*,
  506 F.Supp.3d 867 (N.D.Cal. 2020) ................................................5

*In re Yahoo! Inc. Sec. Litig.*,
  2012 WL 3282819 (N.D.Cal. Aug. 10, 2012) ............................6, 14

*Kang v. Paypal Holdings*,
  620 F.Supp.3d 884 (N.D.Cal. 2022) ..............................................11

*LifeVoxel Virginia SPV v. LifeVoxel.AI, Inc.*,
  622 F.Supp.3d 935 (S.D.Cal. 2022) ................................................6

*McCann v. Lucky Money*,
  129 Cal.App.4th 1382 (2005) ..............................................6, 7, 8, 9

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  2012 WL 1868874 (N.D.Cal. May 22, 2012)..................................11

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
   759 F.3d 1051 (9th Cir. 2014) ............................................................. 6

*Rok v. Identiv, Inc.*,
   2017 WL 35496 (N.D.Cal. Jan. 4, 2017) ............................................. 6

*RSMCFH, LLC v. FareHarbor Holdings*,
   361 F.Supp.3d 981 (D.Hawaii 2019) ................................................. 16

*S.E.C. v. Belmont Reid*,
   794 F.2d 1388 (9th Cir. 1986) ........................................................... 16

*S.E.C. v. Husain*,
   2016 WL 11269462 (C.D.Cal. Oct. 24, 2016) ............................... 12, 13

*SEC v. Mapp*,
   240 F.Supp.3d 569 (E.D.Tex. 2017) .................................................. 11

*Sneed v. Acelrx Pharm.*,
   2022 WL 4544721 (N.D.Cal. Sept. 28, 2022) ..................................... 5

*Sollberger v. Wachovia Sec.*,
   2010 WL 2674456 (C.D.Cal. June 30, 2010) ..................................... 12

*Trivectra v. Ushijima*,
   112 Hawaiʻi 90 (2006) ....................................................................... 16

*Whitman v. Am. Trucking Ass'ns*,
   531 U.S. 457 (2001) ........................................................................... 14

**Statutes**

17 C.F.R. §180.1(a) .............................................................. *passim*

7 U.S.C. §13c(b) .................................................................................. 14

7 U.S.C. §2(c)(2)(D) ........................................................................... 13

7 U.S.C. §9(1) ............................................................................... 4, 13

Cal. Bus. & Prof. Code §17200 ........................................................... 7

Cal. Corp. Code §25235 ..................................................................... 15

Cal. Corp. Code §29536 ..................................................................... 14

Cal. Fin. Code §1815 ........................................................................... 7

Hawaii Rev. Stat. §485A-501 ....................................................... 16, 17

Hawaii Rev. Stat. §485A-603.5 .......................................................... 17

**Rules**

Fed. R. Civ. P. 9(b) ............................................................... *passim*

COHEN **WILLIAMS** LLP

vi

COHEN WILLIAMS LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs CFTC, California Department of Financial Protection & Innovation ("the State of California") and Hawaii Department of Commerce and Consumer Affairs ("the State of Hawaii") have blatantly attempted to grab and exercise power they do not have by bringing this action against Defendants Red Rock Secured, LLC and its CEO Sean Kelly (collectively "Red Rock" unless otherwise indicated) based on alleged misrepresentations and omissions related to Red Rock's markup and pricing of its premium Red-Tailed Hawk ("RTH") coins.  In 2010, a Congressional bill was proposed that would have required precious metal retailers like Red Rock to disclose the markups on their products.  (Request for Judicial Notice "RJN" #1.)  The bill was considered in subcommittee – with testimony from then-current and former members of the FTC – and debated by both sides of the political aisle.  (RJN #2.)  Congress then decided not to act and did not pass the bill.  (RJN #3.)  With this lawsuit, the CFTC and the States basically have said, "We don't care."  They believe metal retailers like Red Rock should have to disclose their markups to consumers (even though the U.S. Mint does not have to disclose its own markup) and they have sued Red Rock for not doing so.

While the Complaint recites a litany of purported misrepresentations and omissions, at its core, this case is about punishing Red Rock for not disclosing the markup on RTH coins – a duty which Congress could have but didn't impose on Red Rock – and for pricing its coins at an appreciably higher cost than the melt value of the metals themselves, which also is not illegal.  (What for-profit business doesn't mark up its wares above the cost of goods?)  The Court should not countenance Plaintiffs' attempt to use their administrative power through this enforcement action to implicitly legislate what they expressly were not empowered to do.  The Court should dismiss Plaintiffs' claims to the extent they are based on alleged misrepresentations and omissions that do not adequately plead falsity, are not pled with Rule 9(b) specificity, were not made in

1  connection with the purchase or sale of commodities, and/or are outside the scope of

2  Plaintiffs' statutory jurisdiction.

3  **II.    STATEMENT OF FACTS**

4          Red Rock sells precious metal products (*e.g.*, bars, rounds and coins) directly to the

5  public.  (Complaint ¶27.)  Several transactions occur before Red Rock's sales: coins are

6  manufactured by mints, which sell them to distributors who, in turn, sell the coins to

7  wholesalers, who sell them to Red Rock.  (Comp. ¶29.)  Even though each transaction in

8  the supply chain includes a markup (Comp. ¶29), Plaintiffs only protest Red Rock's

9  markup to its customers.

10         Red Rock categorizes its precious metal products as either "common bullion" or

11 "premium."  (Comp. ¶39.)  Red Rock advertises that it offers metals in three forms, the

12 following two of which are the focus of this case:

13     • <u>Common bullion</u>: As bars and rounds, common bullion has "no monetary value

14 other than the value of the metal based on weight."  (Comp. ¶¶42-43.)  Common bullion

15 is on the CUSIP ("Committee on Uniform Securities Procedures") list and, thus, is

16 trackable by the government.  (Comp. ¶¶36, 44.)

17     • <u>Monetized Bullion (Limited Quantity)</u>: Limited quantity bullion offers additional

18 value in light of its reduced supply size and functionality as currency that can be

19 exchanged.  (Comp. ¶¶48-50.)  These coins are not on the CUSIP list and, thus, are not

20 trackable.  (Comp. ¶51.)  Given these virtues, Red Rock categorizes monetized bullion

21 (limited quantity) as "premium," and the RTH coins fall within this investment type.

22 (Comp. ¶¶38-39, 53.)

23         Red Rock requires prospective customers to sign a Transaction Agreement before

24 buying any metals.  (Comp. ¶74.)  Text at the top encourages potential buyers to seek

25 independent financial advice prior to investing: "RED ROCK SECURED ACCOUNT

26 EXECUTIVES ARE NOT TAX OR FINANCIAL ADVISORS.  IT IS IMPORTANT

27 THAT CLIENT SEEKS THE ADVICE OF YOUR ATTORNEY OR TAX

28 CONSULTANT AS NECESSARY TO ACHIEVE SUCH UNDERSTANDING."  (RJN

COHEN WILLIAMS LLP

#4 at 58.)  In multiple places, the Agreement also cautions consumers that metals purchases are not promised to deliver investment gains.  For example, the Agreement warns: "[P]urchases of Common Bullion or Premium Products is speculative and … involve substantial risks.  Market prices are volatile and unpredictable and may be affected by a variety of factors … [P]ast performance is no guarantee of future performance." (*Id*. at 58-59.)  Indeed, the Agreement acknowledges that "Red Rock does not guarantee … that Common Bullion Products or Premium Products will appreciate at all or appreciate sufficiently to make Client a profit …." (*Id*. at 59.)  Similarly, the Agreement alerts that expenses can affect customers' returns on investment: "Clients considering Common Bullion Products or Premium Products should consider the associated risks and acquisition costs." (*Id*. at 58.)

Red Rock voluntarily disclosed other information in its Agreements, including how its sales reps are paid: "Red Rock's Account Executives are generally commissioned sales people.  Their salary is based, at least in part, on the amount and profit margin of the products they sell, and they may receive higher compensation for recommending one product over another." (*Id*. at 59.)  Plaintiffs concede that Red Rock also makes clear that its common bullion and premium products are priced *differently* with respect to their melt value.[2]  Quoting directly from the Agreement, the Complaint pleads: "Red Rock advised it customers that common bullion products 'are priced for the most part in accordance with the value of the precious metals they contain.'  In contrast, premium products, including the RTH coins, 'are priced at a premium above the value of the precious metal they contain.'" (Comp. ¶54) (quoting RJN #4 at 58.)

---

[2] Plaintiffs define "melt value" as "the price of a given quantity of metal based on the 'spot' (or per ounce) price.  For example, if the spot price of silver is $16.00 per ounce, the melt value of a half-ounce silver coin would be $8.00." (Comp. ¶57.)

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

### III.   THE COURT SHOULD GRANT DEFENDANTS' MOTION TO DISMISS

####   A.   Plaintiffs Have Failed to State a Claim for Violation of the CEA and Related Regulations (First Claim)

Pursuant to Section 6(c)(1) of the CEA [7 U.S.C. §9(1)], the CFTC enacted 17 C.F.R. §180.1(a), which provides:  "It shall be unlawful … in connection with any … contract of sale of any commodity in interstate commerce, … to intentionally or recklessly: (1) Use or employ … any manipulative device, scheme, or artifice to defraud; (2) Make … any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; [or] (3) Engage … in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person."  Subsection 2 creates a claim for "statement" liability (based on misstatements and omissions), while subsections 1 and 3 trigger "scheme" liability (based on conduct).  *See In re Robinhood Order Flow Litig.*, 2022 WL 9765563 at *5 (N.D.Cal. Oct. 13, 2022).[3]  The Complaint is fatally flawed to the extent it asserts both statement and scheme liability claims under Section 180.1(a).

#### 1.   Many Statements/Omissions Are True or Not Misleading, or Not Sufficiently Pled with Specificity as to Falsity

##### a.   Statements about the Markup of Common Bullion and Omissions about the Markup of RTH Coins

Plaintiffs allege that Red Rock misled customers about the markups on the price of its premium RTH coins by informing consumers that it charged 1%-5% above its cost on *common bullion*.[4]  (Comp. ¶¶82-110.)  Plaintiffs don't claim Red Rock's markup on

---

[3] Although *Robinhood* was decided under SEC Rule 10b-5, courts adjudicating commodities fraud actions rely upon federal securities cases.  *C.F.T.C. v. Monex Credit Co.*, 931 F.3d 966, 976 (9th Cir. 2019); *C.F.T.C. v. Kraft Foods*, 153 F.Supp.3d 996, 1008-1009 (N.D.Ill. 2015).

[4] "The CEA requires that … a plaintiff has 'the burden of proving three elements: (1) the making of a misrepresentation, misleading statement, or a deceptive omission; (2)

common bullion is not 1%-5% (*i.e.*, the statements are true), but instead allege the representations about the common bullion markup were deceptive because Red Rock omitted to inform customers that there was a higher markup on RTH coins. (Comp. ¶¶83, 87.)  Plaintiffs are wrong.  First, they *concede* that the Agreement disclosed that RTH coins were priced higher than the value of metal itself as compared to common bullion, which was priced to mirror the value of the metals they contain. (Comp. ¶54.)

Second, Plaintiffs fail to explain why any purported omissions as to the markup on premium coins are misleading as opposed to being merely incomplete.  "[O]missions are actionable only where they make the actual statements misleading; it is not sufficient that an investor merely considered the omitted information significant.  Section 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information, but instead a duty to include all facts necessary to render a statement accurate and not misleading, once a company elects to disclose that material information.  Thus, [i]f the challenged statement is not false or misleading, it does not become actionable merely because it is incomplete."  *In re Twitter, Inc. Sec. Litig.*, 506 F.Supp.3d 867, 880 (N.D.Cal. 2020), *aff'd*, 29 F.4th 611 (9th Cir. 2022) (citations omitted).

The Complaint does not allege that Red Rock told prospective purchasers that the markup on RTH coins was the same as common bullion (1%-5%). (Comp. ¶¶82-110.)  Nor do Plaintiffs plead that Red Rock was asked about the markup on RTH coins and instead answered by discussing the markup on common bullion.[5]  (*Id.*)  Therefore, at

---

[5] scienter; and (3) materiality.'"  *Bergeron v. Monex Deposit Co.*, 2020 WL 3655495 at *3 (C.D.Cal. Apr. 29, 2020).

[5] The fact that customers later decided to buy RTH coins at higher markups (Comp. ¶¶82-110) doesn't render as false earlier discussions about common bullion at lower markups. "'[T]o meet the requirements of Rule 9(b), Plaintiffs must, for each allegedly false or misleading statement, clearly allege with particularity why the statement was false or misleading *at the time it was made.*'"  *Sneed v. Acelrx Pharm.*, 2022 WL 4544721 at *4 (N.D.Cal. Sept. 28, 2022).

COHEN WILLIAMS LLP

1  worst, Red Rock's representations about the common bullion markup were incomplete

2  statements that cannot give rise to liability.  *See In re Rigel Pharm., Inc. Sec. Litig.*, 697

3  F.3d 869, 880 (9th Cir. 2012) (affirming dismissal of 10b-5 claim arising from release

4  that identified certain drug side effects as "key safety results" but did not disclose impact

5  on blood pressure or liver enzymes); *Rok v. Identiv, Inc.*, 2017 WL 35496 at *6-7

6  (N.D.Cal. Jan. 4, 2017) (same as to SEC filings that disclosed material weakness about

7  financial reporting but not about expense reimbursements).[6]

8        At bottom, while Plaintiffs' allegations concern statements about the markup of

9  common bullion, Plaintiffs actually seek to hold Red Rock liable for not disclosing its

10  markup on premium coins – period.[7]  However, "[s]ilence, absent a duty to disclose, is

11  not misleading under Rule 10(b)-5" [or Rule 180.1(a)].  *LifeVoxel Virginia SPV*, 622

12  F.Supp.3d at 945 (*quoting Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988)).  Red

13  Rock has no duty to disclose the markup on its RTH coins.

14        *McCann v. Lucky Money*, 129 Cal.App.4th 1382 (2005), is instructive.  *McCann*

15  concerned a foreign currency exchange (Lucky Money), which made a profit (in addition

16  to fees) by giving its customers a less favorable rate of exchange on converting dollars

17  into foreign currency than the rate at which the exchange obtained that foreign currency

18  on the wholesale market.  The plaintiff alleged that Lucky Money – by not disclosing the

19  difference between the wholesale rate of exchange and the rate of exchange paid by

20

21  _____

22  [6] *See also In re Yahoo! Inc. Sec. Litig.*, 2012 WL 3282819 at *9 (N.D.Cal. Aug. 10,
   2012), *aff'd*, 611 Fed.Appx. 387 (9th Cir. 2015) (dismissing 10b-5 claim based on mere

23  incomplete statements); *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d
   1051, 1061 (9th Cir. 2014) (same); *LifeVoxel Virginia SPV v. LifeVoxel.AI, Inc.*, 622

24  F.Supp.3d 935, 945 (S.D.Cal. 2022) (same); *Brody v. Transitional Hosps. Corp.*, 280
   F.3d 997, 1006 (9th Cir. 2002) (same).

25

26  [7] Plaintiffs are transparent about what they seek to hold Red Rock liable for in other

27  allegations.  *See, e.g.*, Comp. ¶76 ("none of the Transaction Agreements signed by Red
   Rock's customers disclosed Red Rock's actual mark-ups on the products it sold"); *see*

28  *also* ¶199e, ¶207 and ¶216.

COHEN **WILLIAMS** LLP

consumers (*i.e.*, the markup) – committed an unlawful business practice under Bus. & Prof. Code §17200 based on purported violations of Fin. Code §1815, which required disclosure of the rate of exchange charged to the customer, the fee, and amount of foreign currency received (but not the markup). *Id*. at 1392, 1394. In rejecting plaintiff's argument that Lucky Money's practice of failing to disclose the markup was unlawful, *McCann* relied upon a district court opinion that approved the settlement of a class action based on the same conduct by other exchanges: "'[T]he Code draws a distinction between 'commission or fees' and the 'rate of exchange,' suggesting that the disclosure requirements with respect to the former will not apply to the latter. Further, while California banking officials have been aware for years that money transmitters purchase foreign currency at one rate but offer their customers a less favorable higher rate, ... they have never interpreted the statute so as to require disclosures of the exchange rate spread to customers...." *Id*. at 1394.

The *McCann* court also rejected the argument that Lucky Money's failure to disclose its markup, even if not unlawful, was unfair under the UCL, quoting again from the district court's decision and that of the appellate court:

> Defendants are engaged in business for a profit. Their failure to disclose their own costs or profit margins is not, on its face, unfair. …[¶] Courts may not simply impose their own notions of the day as to what is fair or unfair. Specific legislation may limit the judiciary's power to declare conduct unfair. If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination. [¶] Neiman Marcus does not tell customers what it paid for the clothes they buy, nor need an auto dealer reveal rebates and incentives it receives to sell cars. This is [also] true in financial markets. … The holder of a checking account may be promised a small interest rate (say, 2%) on the balance and is not told at what rate the bank lends these funds to its own customer.

COHEN WILLIAMS LLP

7

*Id.* at 1395-1396.  *See also Fabozzi v. StubHub*, 2012 WL 506330 at *5-6 (N.D.Cal. Feb. 15, 2012) (no duty for reseller to disclose face-value of tickets: "In order for StubHub's failure to print the face value on a reissued ticket to be deceptive, a buyer would have to believe that a reseller in possession of a limited resource … does not charge a premium for her goods. This line of reasoning attributes to consumers a level of stupidity that the Court cannot countenance").

The Complaint does not cite any statute that requires a metals retailer to disclose its markup.  Congress had the opportunity to enact such a mandate and declined to act.  In 2010, the Subcommittee on Commerce, Trade, and Consumer Protection of the Committee on Energy and Commerce debated the proposed Coin and Precious Metal Disclosure Act, which would have required that metals dealers like Red Rock disclose not only the purchase price but also all fees, the melt value, and the reasonable resale value of coins or bullion.  (RJN #1.)  At the hearing, Howard Beales, the former Director of the FTC's Bureau of Consumer Protection, testified against the adoption of the bill, which he described as "essentially requir[ing] disclosures to reveal the seller's markup on the product."  (RJN #2 at 33, 35.)  Congressman Ed Whitfield also highlighted the inequity of requiring private dealers to disclose their markups when the U.S. Mint does not have to disclose its own.  (RJN #2 at 15, 16.)  The Act stalled in committee.  (RJN #3.)  Therefore, like the *McCann* court's decision not to create a duty to disclose a markup of foreign currency that was not required by the California legislature, the Court should decline Plaintiffs' invitation to impose a duty on Red Rock to disclose its markup that was rejected by Congress.

In sum, the Complaint's allegations pertaining to Red Rock's statements about the common bullion markup and any omissions about the markup of premium coins (Comp. ¶¶82-110) – as well as to the failure to disclose the RTH markup without regard to common bullion (Comp. ¶¶76, 199e, 207, 216) – insufficiently plead falsity.  Plaintiffs' first claim should be dismissed to the extent it relies on such statements and omissions.

COHEN WILLIAMS LLP

### b. Statements/Omissions about the Retail Value of RTH Coins

The Complaint similarly fails to adequately plead falsity with respect to Red Rock's pricing of its RTH coins. (Comp. ¶¶153-157, 164-167.) According to Plaintiffs, Red Rock deceived customers when it informed them upon their inquiry after purchase that the "retail value" of their RTH coins was higher than the value shown on their self-directed IRA account statements, which was based on the "melt value" of the metals. (*Id.*) Again, Plaintiffs are wrong. First, how can the "retail value" be false? The retail value was the price at which Red Rock sold the coins. Plaintiffs do not allege that Red Rock quoted a retail value to its preexisting customers that was different than the price its prospective customers were asked to pay. Second, Plaintiffs do not allege why the retail value quoted by Red Rock is false. What should the retail value be based upon, and who should determine it? The CFTC? Like any for-profit business, shouldn't the seller determine the price of its own products? Plaintiffs do not allege that Red Rock is misrepresenting the melt value of its RTH coins or misstating that the retail value is equivalent to the melt value. (*Id.*) Indeed, Plaintiffs base their allegations of wrongdoing on the fact that Red Rock's account statements disclose a melt value lower than the retail price. (*Id.*) Yet Plaintiffs *concede* that the Agreement discloses to prospective customers the basis for the coins' premium exceeding the value of the metals they contain. (Comp. ¶54 – According to Red Rock, "[t]his premium is based on various factors, including, but not limited to, speculative interest, collector and investor demand, available supply, industry promotions, perceived value and economic conditions.")

Just as Plaintiffs try to use Red Rock's statements about its common bullion markup to imply a non-existent duty to disclose the markup on premium metals, Plaintiffs are taking Red Rock to task for pricing/valuing their coins higher than melt value (despite taking no issue that the mint, distributors, and wholesalers do too) under the guise of alleging that Red Rock's stated retail value is misleading. The Court again should reject the government's invitation to regulate Red Rock's practices on valuation and pricing where they have not been *legislated* to be illegal. *See McCann*, 129 Cal.App.4th at 1393

1  (rejecting as "clever semantics" plaintiff's allegation that "the exchange rate Lucky

2  Money quotes to the customer on the exchange receipt … is a 'fictionalized' or 'false'

3  exchange rate [w]hereas [] the exchange rate at which Lucky Money acquires the foreign

4  currency from the bank is the 'true' or 'actual' exchange rate").  The price is the price.

5  Therefore, the Court should also dismiss the first claim to the extent it is based on the

6  purported falsity of the retail value of RTH coins.  (Comp. ¶¶153-157, 164-167.)

7              **c.  Statements in the Transaction Agreement about the Markup**

8          Plaintiffs further allege that Red Rock deceived customers by misrepresenting the

9  markup of RTH coins in earlier versions of the Agreement (Comp. ¶¶74-82), even though

10 they concede that "for almost the entire Relevant Period, the Transaction Agreement did

11 not even include the term 'mark-up.'"  (Comp. ¶77.)  They base this portion of their Rule

12 180.1(a) claim on the following language in the Agreement entitled "Bid/Ask Spread":

13 "The difference between the Purchase Price Client pays for Products under a Purchase

14 Order and the price that Red Rock actually pays for the Products purchased by Client

15 under such Purchase Order is known as the 'spread' and it is stated as a percentage of the

16 Purchase Price paid by the Client."  (Comp. ¶78; RJN #4 at 61.)  According to Plaintiffs,

17 because versions of the Agreement identified the "spread" – or what *Plaintiffs* allege is

18 the markup – for premium coins as being between 4%-29% and the actual markup was

19 between 100%-130%, the Agreement falsely conveyed the markup on RTH coins.  Not

20 so.  Plaintiffs misconstrue the quoted language from the Agreement to fit their

21 unwarranted narrative of deceit.  The "Bid/Ask Spread" clause simply indicates the

22 difference between the price the customer pays Red Rock for a product and the price at

23 which Red Rock offers to buy back the product in the future.

24         The fact that the "Bid/Ask Spread" clause is *not* referencing the markup as

25 Plaintiffs plead but rather, as its name suggests, the buy-back spread is evident from

26 reading the clause in context with the clause in the Agreement that defines what the "bid"

27 price is.  The Buy-Back and Liquidation clause provides: "When Client sells Common

28 Bullion Products or Premium Products originally acquired from Red Rock, Red Rock

COHEN **WILLIAMS** LLP

10

may, in its sole discretion, purchase the products at their current buy-back price *(the 'bid' price)*, without charging a separate liquidation fee."  (RJN #4 at 62.) (emphasis added).  Given this specification of what the "bid" price is, it stands to reason that the "Bid/Ask Spread" clause is informing potential customers that Red Rock will buy back premium metals at a "bid" price that is 4-29% less than what customers will originally pay.  Therefore, Plaintiffs' contention that the "Bid/Ask Spread" clause discloses the markup – impermissibly read out of context – does not plausibly allege a fraud claim.  *See Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 2012 WL 1868874 at *13 (N.D.Cal. May 22, 2012) (citing authority that "statements must be analyzed in context to determine if they are misleading," court held statement to be nonactionable corporate optimism given plaintiff wrongly excised clarifying information from alleged misrepresentation); *Kang v. Paypal Holdings*, 620 F.Supp.3d 884, 896 (N.D.Cal. 2022) (incorporation by reference of documents containing alleged misrepresentations "is necessary to assess the veracity of the challenged statement in context"); *Robinhood*, 2022 WL 9765563 at *7 (plaintiff did not sufficiently allege statement is misleading where plaintiff "divorc[ed] the statement from the remaining sentences").

## 2. Post-Transaction Statements Are Not Made in Connection with Any Contract of Sale

Plaintiffs also cannot state a claim based on purported misrepresentations made *after* Red Rock closes its transactions with customers because such statements were not made "in connection with any … contract of sale of any commodity."  17 C.F.R. §180.1(a).  *See SEC v. Mapp*, 240 F.Supp.3d 569, 580 (E.D.Tex. 2017) ("statements following a sale of securities are not made 'in connection with the purchase or sale' of securities"); *Garrison v. Ringgold*, 2019 WL 2089509 at *8 n.7 (S.D.Cal. May 13, 2019) ("To the extent Plaintiffs will claim, in an amended pleading, that the Offering Memo was provided in connection with their investment …, any alleged misrepresentations must have occurred prior to the purchase of securities").  Such nonactionable post-purchase statements not only include those pertaining to the "retail value" of the RTH

11

1   coins (Comp. ¶¶153-157, 164-167) but also rep Tony Spencer's purported "regular

2   updates" to customers, including the "data overview" allegedly sent to Customer L "two

3   days later" after purchase (Comp. ¶¶158-163); communications with Customer G that

4   took place "later that month" after buying (Comp. ¶¶117-119); Spencer's purported

5   dialogue with Customer H "[t]he next day" after a transaction (Comp. ¶¶126-128); and

6   Spencer's alleged "misrepresent[ations] … after the customer purchased the metals."

7   (Comp. ¶200d.)

### 3.   Plaintiffs Have not Pled a Scheme Liability Claim with Sufficient Particularity under Rule 9(b)

10   The first claim should be dismissed to the extent that its "shotgun" style of

11   pleading makes it impossible to determine the scope of Plaintiffs' scheme liability claim

12   (if any) under Rule 180.1(a)(1) and (3).  "Shotgun pleadings … overwhelm defendants

13   with an unclear mass of allegations and make it difficult or impossible for defendants to

14   make informed responses to the plaintiff's allegations."  *Sollberger v. Wachovia Sec.*,

15   2010 WL 2674456 at *4 (C.D.Cal. June 30, 2010).  Such pleadings do not meet Rule

16   9(b)'s particularity requirement.  *S.E.C. v. Husain*, 2016 WL 11269462 at *3 (C.D.Cal.

17   Oct. 24, 2016).  Here, the first claim incorporates the prior 218 paragraphs (Comp. ¶219)

18   and essentially pleads that everything alleged violates all three prongs of §180.1(a) –

19   confusingly lumping together misstatement and scheme liability under a single claim.

20   While there is *some* specificity with respect to the purported misrepresentations

21   and omissions upon which Plaintiffs rely in asserting a statement liability claim under

22   §180.1(a)(2), there is *no* clarity as to the scope of Plaintiffs' scheme liability claim under

23   §180.1(a)(1) and (3).  Are Plaintiffs alleging the scope of Red Rock's purported

24   wrongdoing goes beyond the dissemination of the alleged misrepresentations and

25   omissions underlying their misstatement claim?  Are Plaintiffs contending *other* conduct

26   was also illegal in and of itself, *e.g.*, the manner in which Red Rock allegedly pitched

27   holders of retirement assets (Comp. ¶¶32-35); the classification of metals as being on or

28   off the CUSIP list (Comp. ¶¶36-38); the categorization of metals as common versus

COHEN WILLIAMS LLP

COHEN WILLIAMS LLP

1  monetized bullion (Comp. ¶¶39-53); the labelling of RTH coins as "limited quantity"

2  (Comp. ¶¶63-65); and the purported incentivization of its reps to sell premium coins

3  (Comp. ¶¶69-73)?  A "complaint is not a puzzle … and [the Court should be] loathe to

4  allow plaintiffs to tax defendants, against whom they have leveled very serious charges,

5  with the burden of solving puzzles in addition to the burden of formulating an answer to

6  their complaint."  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1554 (9th Cir. 1994).

7  Therefore, the Court should dismiss Plaintiffs' scheme liability claim under Rule 9(b).

8  *See Husain*, 2016 WL 11269462, at *3 (dismissing SEC claims that "merely incorporate

9  by reference all 128 paragraphs of factual allegations and recite the generic elements of

10  the statute").  Moreover, apart from its Rule 9(b) failings, Plaintiffs' scheme liability

11  claim should be dismissed to the extent it relies upon the same flawed alleged

12  misrepresentations and omissions described above (*supra*, pp. 4-12).

13        **4.  The CEA Does Not Confer Jurisdiction to Bring an Enforcement**
14            **Action Relating to Retail Metals Sales**

15        In 2010, as part of the Dodd-Frank Wall Street Reform and Consumer Financial

16  Protection Act ("Dodd-Frank"), Congress expanded the CFTC's enforcement authority to

17  include some, *but not all*, retail commodity transactions.  Congress provided the CFTC

18  with enforcement jurisdiction over retail commodity transactions so long as the

19  "agreement, contract, or transaction in any commodity" is "entered into, or offered (even

20  if not entered into), on a leveraged or margined basis," and so long as there is not "actual

21  delivery [of the commodity] within 28 days."  7 U.S.C. §2(c)(2)(D).  Because the CFTC

22  does not – and cannot – allege that Red Rock's transactions are leveraged or not actually

23  delivered within 28 days, the CFTC lacks authority to regulate Red Rock's metals sales.

24        In yet another power grab, the CFTC attempts to circumvent Congress's explicit

25  restriction on its authority to prosecute stand-alone fraud claims involving non-leveraged

26  sales with actual delivery within 28 days by bringing this action under §9(1).  But this

27  attempted end run is without precedent in this Circuit.  *See Monex*, 931 F.3d at 977

28  (noting that it was not deciding whether §9(1) could apply to stand-alone fraud claims in

the sale of non-leveraged commodities).  And it would amount to a staggering expansion of the CFTC's authority that would bring virtually every retail transaction under its enforcement power.  If Congress had intended this result it would have clearly said so. *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress ... does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provision – it does not, one might say, hide elephants in mouseholes.").

### 5. Plaintiffs Have Failed to State a Claim for Control Person Liability Against Kelly

To the extent the Court dismisses the first claim for relief against Red Rock, it must also dismiss the 7 U.S.C. §13c(b) control liability claim against Kelly (Comp. ¶ 224) because Plaintiffs have not sufficiently pled a primary violation.  *See, e.g.*, *In re Yahoo!*, 2012 WL 3282819 at *23 (dismissing control liability claim where no primary violation).

### B. California Has Failed to State a Claim for Commodities Fraud (Second Claim)

California's commodities fraud claim fails to the extent it relies on the same flawed alleged misrepresentations and omissions underlying Plaintiffs' CEA claim.  Given that Corp. Code §29536 bars the same misconduct as 17 C.F.R §180.1(a), a plaintiff must plead the same elements in alleging a claim pursuant to §29536 as a claim under the CEA.  *C.F.T.C. v. Nat'l Inv. Consultants, Inc.*, 2006 W 2548564 at *5 (N.D.Cal. Sept. 1, 2006).  (*Compare with Bergeron*, 2020 WL 3655495 at *3, *supra* p. 4 n.4.)  The first allegation in the State's commodities fraud claim incorporates all 225 preceding allegations in the Complaint.  (Comp. ¶226.)  Therefore, the Court should dismiss the second claim to the extent it is based on the same misrepresentations and omissions that fail to state a claim under §180.1(a).  (*Supra*, pp. 4-12.)

California's fraud claim also is flawed because several allegations "[s]pecific to [c]laims [b]rought by the State" (Comp. ¶¶180-203) are not pled with Rule 9(b) specificity.  For example, Paragraph 186c alleges that Red Rock "touted the advantages

COHEN WILLIAMS LLP

of investing in precious metals as an alternative to stocks, bonds, and the U.S. Dollar."
What did Red Rock say?  Was there anything false about those statements?  The only
example that the State provides is that "Kelly and Spencer [allegedly] told California
Customer 1 that he needed gold and silver in his IRA to protect against market drops or
inflation."  Is the State claiming those statements are false?  If so, *why*?

Paragraphs 186d-j, 188-193, and 195a, which purport to describe investment
advice Red Rock gave to prospective customers, suffer the same deficiencies – is the
State pleading them just to show that Red Rock allegedly acted as an "investment
advisor," or is California *also* alleging that they are misrepresentations?  If the latter,
California has not pled what those misrepresentations and omissions were, *or why* any are
false, as Rule 9(b) requires.[8]  *GlenFed*, 42 F.3d at 1547 n.7.  Red Rock cannot defend
itself from fraud charges without further specificity.

### C.   California Has Failed to State a Claim for Investment Adviser Fraud (Fourth Claim)

Because California's Investment Adviser Fraud statute prohibits the same
misconduct as Rule 180.1(a)(1) and (3) and the state of California bases its statutory
claim on the same allegations of wrongdoing pled in Plaintiffs' first and second claims
(Comp. ¶239), the Court should dismiss the Section 25235 claim to the extent it
dismissed Plaintiffs' federal and state commodities fraud claims based on the failure to
adequately plead falsity and the lack of Rule 9(b) particularity.[9]

---

[8] Other California-specific allegations similarly lack Rule 9(b) specificity.  How did Red
Rock "misrepresent[] how [its] sales representatives or other agents were compensated"
(Comp. ¶198a) when the Agreement disclosed reps were paid by commission based on
the profit margin of the products they sell?  (*Supra*, p. 3.)  And what was false about what
was said?  Red Rock could go on about California's lack of specificity if it had the space.

[9] Defendants deny that they acted as "investment advisers" to their customers, but do not
seek dismissal on this basis.

COHEN WILLIAMS LLP

**D.     Hawaii Has Failed to State a Claim for Securities Fraud and Elderly Exploitation (Fifth and Sixth Claims)**

Hawaii's fifth claim is flawed because the State has not pled that Red Rock's metals are securities.  Unlike the first and second claims, which alleged that Red Rock's sales violated *commodities* fraud statutes, Hawaii's fifth claim is for violation of the state *securities* fraud statute.  Hawaii Rev. Stat. §485A-501(a)(2) prohibits misrepresentations and misleading omissions "in connection with the offer, sale of purchase of a security, directly or indirectly."  In *S.E.C. v. Belmont Reid*, 794 F.2d 1388, 1390-91 (9th Cir. 1986), the Ninth Circuit held that contracts for the purchase of gold coins were not securities under the 1934 Exchange Act because profits on the investment depended on an increase in the price of gold rather than the managerial efforts of the seller.  Courts interpreting whether a particular investment constitutes a "security" under Hawaii law apply a similar test to that of the Ninth Circuit.  *See Trivectra v. Ushijima*, 112 Hawai'i 90, 98 (2006).  Because Hawaii has not pled that Red Rock sold securities rather than commodities, its fifth claim should be dismissed.

Even if Red Rock's sales were encompassed by Hawaii's securities fraud statute, the fifth claim still fails because Hawaii's allegations are insufficient to plead falsity. The State alleges that Red Rock "made untrue statements of material fact and failed to state material facts necessary in order to make the statements made … not misleading" to Hawaii Customers 1 and 2.  (Comp. ¶244.)  However, the Complaint fails to identify those misrepresentations with any particularity.  (Comp. ¶¶204-218.)  Instead, the State pleads only that Red Rock did not disclose the markup of its RTH coins to Customers 1-2.  (Comp. ¶¶207, 216.)  But Red Rock does not have a duty to disclose such markup under Hawaii's security fraud statutes for the same reasons there is no such duty under federal law (*supra*, pp. 5-8).  *See RSMCFH, LLC v. FareHarbor Holdings*, 361 F.Supp.3d 981, 991 (D.Hawaii 2019) ("The standards applicable to Plaintiff's

COHEN WILLIAMS LLP

§10(b)/Rule 10b-5 claim also apply to Plaintiff's §485A-501(a) claims.")[10]

Dated:  July 14, 2023                    **COHEN WILLIAMS LLP**

By:   _____

Neil S. Jahss
Marc S. Williams
Michael V Schafler
Brittany L. Lane
Attorneys for Defendants Red Rock Secured,
LLC and Shade-Johnson a/k/a Sean Kelly

---

[10] The State's sixth claim seeks to impose an added penalty for securities violations against elders under Section 485A-603.5.  Because the State has not stated a claim under §485A-501, it cannot state one under §485A-603.5.

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants Red Rock Secured, LLC and Sean Kelly, certifies that this brief contains 5,596 words, which:

☐ complies with the word limit of L.R. 11-6.1.

X complies with the page and word limit set by court order.

DATED: July 14, 2023

_____
Neil Jahss